Mrs. Minnie L. Myers *v.* Joe Wolf et al.

(*Nashville*, December Term, 1930.)

Opinion filed January 17, 1931.

46

ALBERT WILLIAMS and S. L. FELTS, for complainant, appellant.

CARMACK COCHRAN, JEFF McCARN and S. N. HARWOOD, for defendants, appellees.

· MR. JUSTICE SWIGGART delivered the opinion of the Court.

Complainant's original bill was filed to enjoin the execution of process in the chancery court, issued under a decree of an independent suit, on the ground that the decree in the former suit was void. After answer had been filed, the chancellor sustained a motion to dissolve a temporary injunction theretofore issued; and it appearing to the chancellor that the injunction was the

principal relief sought by the bill, the suit was dismissed. *Mengle Box Co.* v. *Lauderdale Co.,* 144 Tenn., 266. From the decree dismissing the suit complainant has appealed to this court.

The record does not disclose the grounds of the motion to dissolve the temporary injunction, and the chancellor assigned no reason for his action thereon. It may be assumed, however, that the chancellor failed to find any equity on the face of the complainant's bill.

The decree, which is sought herein to be adjudged void, was rendered by the Chancery Court of Davidson county upon the bill of E. D. Mouzon filed against the present complainant, Minnie L. Myers, and her husband, J. A. Myers. It recited the conveyance in April, 1927, of a tract or lot of real estate in Davidson county to two defendants, and the execution by them of three promissory notes in part payment, falling due in one, two and three years from the date of the deed, the first two notes being for $1,000 each and the third for $500; for all of which a vendor's lien was retained. The decree, rendered May 22, 1929, adjudged the default of the defendants at the dates of maturity of the two notes for $1,000 each, and that the note for $500 had become payable by virtue of the right of the holder to declare it due and payable because of the default on the previous notes. The court thereupon gave judgment for the complainant, Mouzon, against the defendants for the aggregate of the three notes, and directed the sale of the real estate covered by the vendor's lien, with direction that the purchaser should assume a note for $7500, secured by a deed of trust on the property, "and for the balance, that is the equity in said property, the purchaser will pay one-fourth cash and will be required to execute for the

balance of the purchase price four notes," etc. The decree directed that the clerk and master should execute a deed to the purchaser, upon the payment of all the purchase money notes, "divesting title out of the parties to this cause and vesting same in the purchaser." It was further decreed that the sale should be free from the equity of redemption, homestead and dower.

The bill in the cause now before us recites the holding of the sale under the decree above set out, the confirmation by the chancery court of the purchase by J. D. McCarn, and the issuance of a writ of possession, directing that the said J. D. McCarn be placed in possession of the premises.

The present action is brought against E. D. Mouzon, complainant in the first cause, J. D. McCarn, purchaser under the decree of sale, and Joe Wolf, the deputy sheriff in whose hands the writ of possession was placed for execution. J. A. Myers, husband of complainant, who was one of the defendants in the first cause, is not a party to this action.

Complainant's bill avers that the real estate in question was her sole and separate property; that the deed of E. D. Mouzon conveyed the same to her alone; and that J. A. Myers had no interest thereunder.

The bill avers that the decree directing the sale of the property, the purported sale itself, and the decree confirming the sale, are void because (1) complainant was not a party to the suit, process was not served upon her, and she neither made appearance nor authorized anyone to make appearance therein for her, wherefore the court had no jurisdiction of her person; (2) the adjudication in the decree of May 22, 1929, that the owner of the three purchase money notes was entitled to declare the third

note due and payable, prior to the date of its maturity, because of the default in the preceding note, was "unsupported by any allegation of said bill and wholly outside of and beyond said bill," the decree having been rendered prior to the date of the maturity of the third note; (3) the owners and holders of the $7500 first mortgage lien, which the purchaser under the decree was required to assume, being parties in interest, were not made parties to the suit and were not before the court; and (4) the adjudication that the sale should be free from any equity of redemption, and should be made on a credit, was not supported by any averment or application "made in the bill or at the bar."

The bill prays that the decree of May 22, 1929, ordering the sale of said property, be adjudged void, and that said purported sale be declared void and of no effect; and for general relief.

It is assigned as error by the complainant (appellant) that the chancellor should have held the decree of May 22, 1929, void because there was no appropriate averment in the bill to support a decree on the note for $500 which was not then due, and the bill did not aver that the real estate was so situated that it could not be sold in part to satisfy the two notes then in default, as authorized by sections 5326-5328 of Shannon's Code (Code of 1858, sections 3563-3565).

The original bill of E. D. Mouzon, exhibit to complainant's bill herein, averred the liability of the defendants on the three notes for which the vendor's lien was retained; that nothing had been paid on any of them; prayed specifically for a decree on the first note, in default when the bill was filed; and further prayed: "that complainant be allowed to so amend his bill from time

to time as to be granted a judgment on the other notes not yet matured as they become due either by limitation of time or by option of holder on account of default, and that complainant be granted a decree enforcing his said lien as provided in his deed to defendants and stated on the face of the notes and that the real estate described in this bill be ordered sold for the purpose of paying said notes and enforcing complainant's lien, free from all equities of redemption, homestead and dower.''

The decree of May 22, 1929, included the amount of the third note, upon the express finding of the chancellor ''that the last of the three notes in the sum of $500 has not yet matured by reason of expiration of the time, but under the terms of the deed executed by the complainant to the defendants, it is provided that the holder of said note or notes has the right, after default of sixty days, to declare all the notes due and payable.''

In *Murphy* v. *Johnson*, 107 Tenn., 552, it was held that a decree for an amount in excess of that which the bill showed to be due from the defendant, was void as to the excess, because ''wholly without warrant in the pleadings.'' And it is generally held that ''a decree beyond the fair scope of the pleadings is void.'' *Lieberman, Loveman & Cohn* v. *Knight,* 153 Tenn., 268; *Thompson* v. *Keck Mfg. Co.,* 107 Tenn., 451.

An original bill, weighed on demurrer, is given a liberal construction, with all reasonable intendments taken in its favor. *McFarland* v. *Mass. Bonding & Ins. Co.,* 157 Tenn., 254. And certainly no less liberal rule of construction should be applied when testing the sufficiency of a bill to support a decree against attack in an independent suit brought for the purpose. ''The cardinal rule,'' says the court in *Dodd* v. *Benthal,* 51 Tenn. (4

'Heiskell), 601, 609, "is that the bill must not be so vague that the defendant may be surprised by a case that he could be prepared to meet."

 It is not sufficient to render a decree void, that the bill which supports it aver essential facts defectively or with a lack of certainty. It must appear that the decree is without the scope of the bill. We are of opinion that the bill in the first suit was fairly construed by the chancellor as asking for a decree on the notes due at the date of the hearing, because matured by their own terms, and on the note not then matured, because of the default in the others; and given this construction, the decree rendered was not "beyond the fair scope" of the bill.

 The chancellor having found the entire debt due and payable, properly enforced the vendor's lien on the entire tract, and the sections of the code above referred to were not applicable.

 The decree of May 22, 1929, directed that at the sale to be held thereunder "The purchaser will assume the $7500 note secured by a deed of trust on said property, with accumulated interested thereon, and the taxes for 1929."

If this requirement was improper, we do not think it rendered the decree void. Mere errors or irregularities are not sufficient to invalidate a decree when attacked in a collateral or subsequent suit. Freeman on Judgments (5 Ed.), section 1217, pages 2529-2530.

The decree disclosing the existence of an outstanding mortgage, superior to the vendor's lien, it is contended that the proceedings to enforce the lien, including the decree, were void, because the prior mortgagee was not a party to the suit.

■ If the prior mortgagee was a necessary party, it is for the reasons stated in *King* v. *Patterson,* 129 Tenn., 1, 16-17, wherein the court held that attachments by creditors of the equitable interest in real estate of their absconding debtor were void because the holder of the legal title was not made a defendant to the suit in which the attachments were sued out. In so holding, the court deemed it proper to expressly note that none of the attacking creditors was seeking to enforce any legal or equitable lien previously acquired, and that ."no personal service of process was ever had upon the holder of the equitable estate" sought to be reached by the attachment. The court did not refer to nor expressly distinguish the case of ·*Wessel* v. *Brown,* 78 Tenn., 686, wherein this court held that a judgment creditor may subject to the satisfaction of his judgment an equity of redemption of his debtor, in a suit brought for the purpose against the debtor, without bringing in as parties defendant the holders of the legal title to the land in question.

Undoubtedly, as said by the court in *Wessel* v. *Brown, supra,* "the better practice is to bring all the parties in interest before the court and have their respective rights and equities ascertained." This would tend to prevent possible sacrifice of the debtor's rights, and in that way protect the rights of the creditor, as pointed out in both cases last cited. But the failure to have the owner of the legal title to land before the court, in a suit to sell the defendant's equitable interest therein, could only affect the interests and rights of those who are parties. *Mims* v. *Mims,* 20 Tenn. (1 Humph.), 425; *Rowan* v. *Mercer,* 29 Tenn. (10 Humph.), 359; *Steele* v. *Satterfield,* 148 Tenn., 649. In the case last cited, the court said:

"The holdings in *Mims* v. *Mims* and *Rowan* v. *Mercer*, *supra*, that a decree of foreclosure of a mortgage is not invalidated by failure to make either prior or subsequent encumbrancers parties, do not control here. These holdings are not in conflict with the theory that those not parties are not affected, but rather confirm it."

The owner of the equitable estate, made a defendant to a bill to subject his equity to the claims of his creditors, whether secured by lien or not, may always have the holders of the legal estate brought in for the adjudication of the extent and nature of their estate, if he deems their appearance material to the protection of his rights. This may be done by demurrer for the want of proper parties, addressed to the discretion of the chancellor; or by cross bill filed as a matter of right. And if the debt or obligation to secure which the legal estate or title is outstanding is matured, the creditor (and it would seem the debtor also, by his cross bill) may bring the holder of the legal title in, and force a sale of the entire property, with a proportionate division of the proceeds. This is the holding in *Fulghum* v. *Cotton*, 74 Tenn., 596, cited and quoted in *King* v. *Patterson, supra*. And see *Harris* v. *Beasley*, 123 Tenn., 605.

If the lienor and the owner of the equity are willing to have the equity sold and the proceeds applied, as was done herein, without having the mortgagee brought in for an adjudication of the extent of his interest, the creditor's assent being evidenced by his failure to make the mortgagee a defendant, and the debtor's by his failure to protest at the absence of the mortgagee, we can conceive of no reason for holding the proceedings and sale void, when attacked in a subsequent litigation between the same parties. In so far as questions of

public policy may be involved, for the protection of purchasers of equitable estates sold in such proceedings, the registration laws afford ample means for their protection; and as stated, a prior encumbrancer is not affected by a suit to which he is not a party.

 Complainant's contention that the bill filed by Mouzon did not support the direction of the decree that the sale of the equity should be "free from any equity of redemption and should be made on a credit," is wholly without merit. The bill contained the specific prayer that the sale be made "free from all equities of redemption, homestead and dower." Shannon's Code, sections 3811, 6306; Code of 1858, sections 2124, 4489; *Hughes Mfg. Co.* v. *Conyers,* 97 Tenn., 274.

We have disposed of the questions hereinabove discussed, on the assumption that the complainant was properly before the court which rendered the decree under attack and within its jurisdiction.

The averments of the bill, by which it is contended that the court did not obtain personal jurisdiction of complainant, are:

"On January 8, 1929, what purported to be the answer of J. A. Myers and wife, Minnie L. Myers, was filed in this Court, but complainant, Minnie L. Myers, knew nothing of said suit, the filing of said purported answer, had never been served with process in said cause, and did not file said answer or authorize anyone to file the same in her behalf.

"Complainant knew nothing of the pendency of said bill, the filing of said answer or any of the proceedings hereinafter detailed until recently and after the issuance of said writ of possession. . . .

"Complainant, Minnie L. Myers, had no knowledge of the filing of said bill of said Edwin D. Mouzon, or of its pendency, no process was served upon her and she knew nothing whatever of the filing of said answer purporting to be both of herself and J. A. Myers. She did not authorize anyone to file said answer or to enter any appearance in said cause for her. For this reason the Court acquired no jurisdiction of her person and all proceedings in said cause are utterly void as to her."

Assuming that process was issued in the suit of Mr. Mouzon, and that it was regularly returned as having been executed on Mrs. Myers, as to which the bill herein is silent, the quoted averments are sufficient to deny the truth of the return. While the return of an officer reciting the execution of process is conclusive in the suit in which it is made, as constituting "the best evidence of the fact it states," (*Wilson* v. *Moss,* 54 Tenn., 417, 419) and may not be traversed therein (*McBee* v. *State,* 19 Tenn., 122), this "does not deprive the petitioner of his remedy in chancery." *Insurance Company* v. *Webb,* 106 Tenn., 191, 192.

The present bill is a direct attack upon the validity of the decree rendered in the former suit, in so far as it purports to affect the complainant. "A direct attack upon a judgment is by appropriate proceedings between the parties to it seeking, for sufficient cause alleged, to have it annulled, reversed, vacated or declared void." *Pope* v. *Harrison,* 84 Tenn., 82, 90.

In this jurisdiction, as well as elsewhere, it has been recognized that a suit in equity may be prosecuted to secure relief against a decree or judgment rendered by a court which did not have jurisdiction of the person of the complaining party affected by it. It was so held

first in *Caruthers* v. *Hartsfield,* 11 Tenn. (3 Yerger), 366. The conclusiveness which is accorded the return, showing service of process, in the suit in which such judgment or decree is rendered demands a remedy in equity, and the early holding to that effect in *Ridgeway* v. *Bank,* 30 Tenn. (11 Humph.), 522, is quoted in Freeman on Judgments (5 Ed.), section 1229, page 2558, as an "obvious and conclusive answer" to argument to the contrary.

In *Ridgeway* v. *Bank, supra,* the court (TOTTEN, J.) said: "In the first place it is very evident, that if the party was not summoned, and did not appear in the suit at law, the court had no jurisdiction of his person, and its judgments against him, would be, for that reason, merely void."

Freeman on Judgments (5 Ed.), section 1189, states the weight of authority to be that a person invoking equitable relief against a judgment, because rendered without jurisdiction of the person, must show a meritorious defence which he could have asserted if given his day in court, but this court held the contrary in *Bell* v. *Williams,* 38 Tenn. (1 Head), 228, wherein it was said:

". . . We are satisfied from the proof in this record, that no process was executed upon the complainant in the action at law, and that he did not appear to make defence to it, and in fact had no notice of the judgment until long after its rendition.

"This being so, upon the authority of the case of *Ridgeway* v. *The Bank of Tennessee,* 11 Humph., 523, he was entitled to relief, and it was not material in such a case, to enquire whether the complainant could have made a valid defence if he had been summoned.

"It has been repeatedly held by this court, that in such

a case the injury consists in the rendition of a judgment against a party, without notice and the opportunity of defence, and that it is unjust and unconscientious to attempt to enforce a judgment so obtained.''

The authority of these cases has never been questioned in this State, and they are grounded on sound and fundamental principles of equity jurisprudence, with which we are in thorough accord. They have been followed by the Court of Appeals in two recent cases, in which *certiorari* was denied by this court. *May* v. *Gutman's, Incorporated,* 2 Tenn. App., 43; *McLean* v. *Chanabery,* 5 Tenn. App., 279. Other citations seem unnecessary.

We hold, therefore, that complainant was entitled to have her bill answered, and to a hearing on the merits of her charge that the decree in the former suit was void for lack of jurisdiction of her person.

With reference to the burden and *quantum* of proof on this issue, this court, in *Tatum* v. *Curtis,* 68 Tenn., 360, said: ''The *onus* of proof is upon the complainant; his own testimony but counterbalances that of the official act and testimony of the officer. It would not do to set aside the judgments of courts and the official acts of officers, upon the simple denial of the service by the party himself, unsupported.''

To the same effect is *Driver* v. *Cobb,* 1 Tenn. Chy., 490.

The presumption being against the averments of complainant's bill on this issue, we do not think the chancellor abused his discretion in dissolving the temporary injunction, on the motion of the purchaser under the decree in the former suit; and the decree to be rendered here will not reinstate the injunction. We think the fact that complainant's husband was before the court in the former suit, and had full knowledge of the proceedings,

sufficient to postpone complainant's right to injunctive relief until it is established by proof and decree on the final hearing, in the absence of any averment of fraud or effort to overcome the presumption of the regularity of the proceedings in the former suit. On the remand, the defendants will be at liberty to proceed with the receivership ordered by the chancellor, or to cause the execution of the writ of possession issued in the former suit, subject to such further orders and decrees as the chancellor may make. If the receivership is enforced and the property is rented by the receiver, we suggest that the complainant should be given the preference in the rental, upon giving proper security for the rent; but this will lie in the discretion of the chancellor.

The decree of the chancellor dismissing complainant's bill will be reversed, and the cause remanded to the chancery court for further proceedings consistent with the views herein expressed. The costs of the appeal will be paid, one-half by the complainant, and one-half by the defendants.